UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEVERN SIMS and AARON GEORGES,

     Plaintiffs,

v.                                               Case No: 8:16-cv-3382-T-36JSS

UNATION, LLC and GEORGE
BEARDSLEY,

     Defendants.

_____/

# O R D E R

This matter comes before the Court upon Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 43), and Plaintiff's response thereto (Doc. 46).  Plaintiffs filed a five-count Second Amended Complaint (Doc. 41) against Defendants seeking payment of overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§201-219 ("FLSA"), damages for filing a fraudulent information return, recovery of unpaid wages under Florida law, and unlawful retaliation in violation of the FLSA.  Defendants move to dismiss each count of the Second Amended Complaint.  Doc. 43.  The Court, having considered the motion and being fully advised on the premises, will grant the motion to dismiss Count III with leave to amend the Second Amended Complaint within 14 days to correct the deficiencies noted herein.  Additionally, the parties agree that Counts IV and V should be dismissed with respect to Defendant George Beardsley.  Defendants' motion to dismiss Counts I and II is denied, and UNATION's motion to dismiss counts IV and V against it is denied.

## I.   BACKGROUND AND FACTS[1]

Plaintiffs Severn Sims ("Sims") and Aaron Georges ("Georges") (collectively, "Plaintiffs"), on behalf of themselves and other similarly situated individuals, filed this action under the FLSA against Defendants UNATION and George Beardsley ("Beardsley") (collectively, "Defendants").  Doc. 41.  Defendants develop, market, and sell a social media application.  *Id.* ¶ 9.  Plaintiffs allege that Defendants had gross revenues of at least $500,000 annually and had employees in commerce or in the production of goods for commerce.  *Id.* ¶ 9.  In support of this latter allegation, Plaintiffs allege that Defendants employed people who traveled to other states for their jobs, produced marketing materials that were used in other states, made calls to clients in other states, and used tools and equipment (such as computers, pens, and paper) that were moved in or produced for commerce.  *Id.*

Plaintiffs allege that they were misclassified by Defendants as independent contractors when they were actually employees.  *Id.* ¶ 14.  The purpose of this misclassification was to avoid paying overtime wages and deducting all employment taxes.  *Id.* ¶¶ 33-34.  Essentially, Defendants sought to reduce labor costs by avoiding the expenses associated with employees, but not independent contractors.  *Id.* ¶ 36.

Additionally, Defendants, through their legal counsel, required their employees to create limited liability companies, for which Defendants' counsel was the registered agent.  *Id.* ¶ 32.  Defendants paid the limited liability companies in lieu of paying Plaintiffs directly, and the limited liability companies were used to effectuate the misclassification scheme.  *Id.* ¶ 72.  Sims' limited

---

[1] The statement of facts is derived from the Amended Complaint (Doc. 35), the allegations of which the Court must accept as true in ruling on the instant Motion.  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

liability company was Sluggo Graphics, LLC ("Sluggo"), and he was the sole member. *Id.* ¶ 43. Georges' limited liability company was Look Alive Design, LLC ("Look Alive"), and he was the sole member. *Id.* ¶ 44.

Sims worked for Defendants from November 2011 until he was terminated on November 23, 2016. *Id.* ¶ 40. Georges worked for Defendants from August 2012 until he was terminated on November 23, 2016. *Id.* ¶ 41. Plaintiffs both regularly worked more than forty hours per week. *Id.* ¶¶ 40-41. UNATION filed a complaint in state court against Sims and Sluggo on April 3, 2017, and filed a separate complaint in state court against Georges and Look Alive on the same date. *Id.* ¶¶ 43-44; Doc. 43-1; Doc. 43-2. The lawsuits lacked a reasonable basis in fact, contained false allegations, alleged bogus damages, and sought injunctive relief to which UNATION was not entitled. Doc. 41 ¶ 45. Such suits were not filed against former employees who did not exercise their FLSA rights, but who engaged in conduct that served as the basis for the claims against Plaintiffs. *Id.* ¶ 46.

Based on these facts, Plaintiffs filed the five count Second Amended Complaint against Defendants. Count I is for recovery of overtime compensation under the FLSA; Count II is a collective claim for overtime pay for similarly situated individuals; Count III alleges a violation of 26 U.S.C. § 7434(a), which creates a cause of action for willfully filing a fraudulent information return with respect to payments purported to be made to any other person; Count IV seeks recovery of wages for Georges only under Florida law; and Count V alleges unlawful retaliation under the FLSA based on the state court lawsuits. *Id.* ¶¶ 48-83.

Defendants moved to dismiss Counts I and II for failing to state a claim for FLSA coverage, and because even if coverage was sufficiently alleged, Plaintiffs are exempt from FLSA coverage under the creative professional and administrative employee exceptions. Doc. 43 at 4-9. Beardsley

moved to dismiss Counts I and II against him, and argued that the Second Amended Complaint did not contain sufficient factual allegations to state a claim against him as an employer. *Id.* at 13-14.

Defendants moved to dismiss Count III on the basis that the Second Amended Complaint does not allege that Defendants willfully or fraudulently issued false information returns, and the statute does not create a cause of action if the information return that was filed misclassified an employee but was accurate as to the amount paid. *Id.* at 9-11. Beardsley moved to dismiss Count III against him because the Second Amended Complaint did not allege that he filed or was responsible for filing the information returns for Plaintiffs' compensation. *Id.* at 14.

Defendants moved to dismiss Count IV for lack of subject matter jurisdiction, and argue that if the federal counts of the Second Amended Complaint were to be dismissed, no subject matter jurisdiction would exist for a state law claim. *Id.* at 11.

Defendants also moved to dismiss Count V of the Second Amended Complaint, contending that the Florida litigation privilege provides absolute immunity from FLSA retaliation liability based on the filing of a state court action. *Id.* at 11-12. Beardsley moved to dismiss Count V because UNATION was the only named plaintiff on the complaints filed in state court. *Id.* at 12.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

- 4 -

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.

## III.   DISCUSSION

### A.   FLSA

"The [FLSA] requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 206(a), 207(a)).  The FLSA creates a private cause of action for an employee who was not paid the statutory wage that allows him or her to recover unpaid overtime wages and back pay from the employer. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 622 F.3d 1292, 1298 (11th Cir. 2011). To state a claim for unpaid overtime wages under the FLSA, a plaintiff must allege sufficient facts to show that (1) he or she was employed by the defendant; (2) either the defendant is an enterprise engaged in interstate commerce so as to qualify for enterprise coverage, or that the plaintiff is otherwise covered under the FLSA through individual coverage; and (3) the defendant failed to compensate the plaintiff for the hours worked. *Valcin v. Am. Sec. Grp., A-1, Inc.*, No. 15-21331-CIV-GAYLES/TURNOFF, 2015 WL 6692269, at *1 (S.D. Fla. Nov. 3, 2015) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).  The second element regarding coverage is at issue in this case.

#### 1.   FLSA Coverage

Enterprise coverage applies where the employer has (1) "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person,"

and (2) at least $500,000 of "annual gross volume of sales made or business done." *Polycarpe*, 616 F.3d at 1220 (quoting 29 U.S.C. § 203(s)(1)(A)).  Individual coverage applies where as part of an individual's employment, he or she is (1) engaged in commerce, or (2) engaged in the production of goods for commerce. *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006).  A plaintiff "need not do much" to plead individual or enterprise coverage, but must, at least, "allege specific facts concerning the nature of the plaintiff's work and whether the work involved a connection to interstate commerce." *DeJean v. HLM Protective Serv., Inc.*, No. 17-61291-Civ-Scola, 2017 WL 4876298, at *2 (S.D. Fla. Oct. 27, 2017) (citing *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1377 (S.D. Fla. 2012)). Defendants move to dismiss Counts I and II of the Second Amended Complaint on the basis that Plaintiffs have not stated a claim for enterprise or individual coverage.  Doc. 43 at 4-7.

### a.      Enterprise Coverage

The Code of Federal Regulations provides clarity as to the first prong of enterprise coverage, explaining:

> [For] an enterprise to be a "covered enterprise" [it] must have at least some employees engaged in certain described activities.  This requirement will be determined on an annual basis . . . .  Thus, it is not necessary that the enterprise have two or more employees engaged in the named activities every week.  An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, **it regularly and recurrently has at least two or more employees engaged in such activities**.  On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238 (emphasis added).  In other words, it is not sufficient to have "a single employee who is directly engaged in commerce," or to have "two or more employees who only engage in commerce on isolated occasions." *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d

1343, 1347 (S.D. Fla. 2009).  Instead, an employer must have "two or more employees [who] (i) recurrently engage in commerce or the production of goods for commerce, or (ii) recurrently handle materials that previously moved through interstate commerce."  *Id.*

Defendants argue that Plaintiffs fail to state a claim for enterprise coverage because the Second Amended Complaint does not specifically allege (1) that two or more employees engaged in commerce or in the production of goods for commerce, and (2) that the employees' engagement in commerce or in the production of goods for commerce was regular or recurrent.  Doc. 43 at 5-6.  Plaintiffs are correct that Defendants' argument as to the number of employees is specious.  Doc. 46 at 4.  Plaintiffs did not specifically use the phrase "two or more," but by using the plural of "employees," Plaintiffs necessarily allege that Defendants had more than one employee—meaning two or more—engaged in commerce or in the production of goods for commerce.  Doc. 41 ¶ 9.

With respect to the frequency of interstate commerce or the production of goods for commerce, the Second Amended Complaint does not allege how often this occurred.  Instead, it alleges that Defendants "employed employees engaged in commerce or in the production of goods for commerce," providing as examples that "employees employed by Defendants traveled to other states for their jobs, produced marketing materials that were used in other states, made calls to clients located in other states, and used tools and equipment, including computers, pens and paper that were moved in or produced for commerce."  Doc. 41 ¶ 9.

The burden of stating a claim for enterprise coverage is not an onerous one.  *DeJean*, 2017 WL 4876298, at *2.  Instead, the pleading standard requires sufficient factual allegations to place the defendant on notice of the claim against him or her, and the grounds upon which the claim rests.  *Vazquez v. Insight Behavioral Health Specialists, LLC*, No. 6:16-cv-1827-Orl-22GJK, 2017

WL 2899935, at *3 (M.D. Fla. Apr. 20, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), *report and recommendation adopted*, 2017 WL 3588684 (Aug. 2, 2017). The allegations here, when viewed in the light most favorable to Plaintiffs, are sufficient to state a claim for enterprise coverage. *Hu v. Windhaven Ins. Co.*, No. 8:15-cv-277-T-35TGW, 2015 WL 12835683, at *2 (M.D. Fla. Mar. 16, 2015) (finding that the allegations of the complaint satisfied the basic pleading requirements and put the defendants on notice of what was alleged sufficiently to formulate an answer). Accordingly, Defendants' motion to dismiss Counts I and II for failure to state a claim for enterprise coverage under the FLSA is denied.

### b.    Individual Coverage

Under individual coverage, an employee is covered if he or she is engaged either in commerce or in the production of goods for commerce. *Thorne*, 448 F.3d at 1266 (citing 29 U.S.C. § 207(a)(1)). An individual is engaged in commerce if he or she "directly participat[es] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce . . . or (ii) by regularly using the instrumentalities of interstate commerce in his work." *Id.* Participation must be by regularly using instrumentalities of interstate commerce, and interstate activities must be regular and recurrent, and not sporadic. *Id.* at 1266.

Defendants moved to dismiss Counts I and II for failure to state a claim for individual coverage because although the Second Amended Complaint provides examples of interstate commerce, it does not describe the regularity with which Plaintiffs engaged in such activities. Doc. 43 at 6-7. Additionally, the Second Amended Complaint does not explicitly state that Plaintiffs themselves engaged in interstate commerce, or did so with regularity. *Id.* at 7.

The Second Amended Complaint alleges that "Plaintiffs were involved in interstate commerce." Doc. 41 ¶ 10. Although it does not specify that Plaintiffs were among the employees

who "traveled to other states for their jobs, produced marketing materials that were used in other states, made calls to clients located in other states, and used tools and equipment . . . that were moved in or produced for commerce," this is an inference that may be made in Plaintiffs' favor. *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994) (stating that in ruling on a 12(b)(6) motion, the Court accepts reasonable inferences from the complaint). As is the case regarding the regularity of engagement in interstate commerce argument for enterprise liability, the Court finds that the allegations are sufficient to put Defendants on notice of the claim and state a claim for individual coverage. Accordingly, Defendants' motion to dismiss Counts I and II of the Second Amended Complaint on the basis of failure to state a claim for individual coverage under the FLSA is denied.

### 2.    FLSA Exemptions

The FLSA provides that its minimum wage provisions "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delineated from time to time by regulations of the Secretary." 28 U.S.C. § 213(a)(1). Two of these exemptions are known as the creative professional exemption and the administrative employee exemption, which Defendants assert apply here.

The Supreme Court has directed "that courts closely circumscribe the FLSA's exemptions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008) (quoting *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1977)). "Therefore, we narrowly construe exemptions to the FLSA overtime requirement." *Id.* (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008)).

Additionally, "the general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass*

*Works v. Brennan*, 417 U.S. 188, 196 (1974).  "Generally, the existence of an affirmative defense will not support a motion to dismiss," unless the allegations of the complaint establish the existence of the affirmative defense.  *Quiller v. Barclays Am/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984); *see also Lambiase v. DPT Kennedy Inc.*, No. 8:15-cv-2009-T-30TBM, 2015 WL 8324568, at *2 (M.D. Fla. Dec. 9, 2015).

### a.    Creative Professional

With respect to the creative professional exemption, the Code of Federal Regulations provides that an "employee employed in a bona fide professional capacity" is any employee "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week" and "[w]hose primary duty is the performance of work . . . [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."[2]  29 C.F.R. § 541.300.  The Code further states that "[t]he exemption does not apply to work which can be produced by a person with general manual or intellectual ability and traning," and that "[t]o qualify for exemption as a creative professional, the work performed must be 'in a recognized field of artistic or creative endeavor' " such as "music, writing, acting and the graphic arts."  *Id.* § 541.302(b).  Additionally, the Code recognizes that "[t]he duties of employees vary widely, and exemption as a creative professional depends on the extent of the invention, imagination, originality or talent exercised by the employee."  *Id.* § 541.302(c).  Because of this, "[d]etermination of exempt creative professional status . . . must be made on a case-by-case basis."  *Id.*  As examples of what could or could not qualify, the Code explains:

---

[2] Amendments to 29 C.F.R. §§ 541.100-.200 were scheduled to become effective on December 1, 2016, but were held invalid and implementation stayed by *Nevada v. United States Department of Labor*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2017), appeal pending; however, the amendments do not affect the analysis in this case.

This requirement generally is met by actors, musicians, composers, conductors, and soloists; painters who at most are given the subject matter of their painting; cartoonists who are merely told the title or underlying concept of a cartoon and must rely on their own creative ability to express the concept; essayists, novelists, short-story writers and screen-play writers who choose their own subjects and hand in a finished piece of work to their employers (the majority of such persons are, of course, not employees but self-employed); and persons holding the more responsible writing positions in advertising agencies. This requirement generally is not met by a person who is employed as a copyist, as an "animator" of motion-picture cartoons, or as a retoucher of photographs, since such work is not properly described as creative in character.

*Id.*

Defendants move to dismiss Counts I and II of the Second Amended Complaint based on the creative professional exemption. Defendants argue that because Plaintiffs allege that they performed "graphic design tasks" and "created mobile apps or content for web pages" for Defendants, it is clear on the face of the Second Amended Complaint that Plaintiffs are exempted from coverage under the FLSA as creative professionals. Doc. 43 at 7-8.

In making their argument, Defendants rely on *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677 (D. Conn. 2008), which has little, if anything, in common with the case at hand. Initially, *Asp* was before the United States District Court for the District of Connecticut on a motion for partial summary judgment, not a motion to dismiss, an important distinction with respect to proving an affirmative defense. *Id.* at 679. Additionally, the plaintiff in *Asp* was a photographer, not an application or graphic designer. *Id.* The defendants presented evidence that as part of a transition from a film to digital studio, "they purchased new equipment and began to search for an employee who was an artist capable of working with new technology," and that the plaintiff "had an art degree, a photography and arts background, an understanding of Adobe Photoshop, and an impressive portrait portfolio . . . ." *Id.* at 692. The evidence included an affidavit indicating that the photographer required "creativity and talent" to "visualize[] the final portrait," "create a scene

using the appropriate background," and "make lighting adjustments, place the client in a pose, and adjust the client's composition in preparation or during photos . . . ." *Id.* The plaintiff spent approximately fifteen to twenty percent of her time taking photos, and the remaining time enhancing, manipulating, and editing the photos. *Id.* Even with this evidence, the Court found that "there [were] a great deal of facts in dispute," and summary judgment was not proper. *Id.* at 693.

A review of *Asp* indicates, if anything, that the undeveloped facts pleaded in the Second Amended Complaint are not sufficient to meet Defendants' heavy burden of proving the creative professional's exemption. The Second Amended Complaint does not indicate the extent of time Plaintiffs spent on graphic design tasks, or on creating mobile applications or website content. The Second Amended Complaint also does not include information regarding the degree of invention, imagination, originality, or talent required by Plaintiffs. There are not allegations indicating how much independence Plaintiffs exercised in developing ideas for such tasks, and how much of their work was specifically directed by Defendants. Thus, the allegations of the Complaint do not establish the affirmative defense of the creative professional's exemption and do not provide a basis to dismiss Counts I and II of the Second Amended Complaint in reliance on this exemption.

### b.    Administrative Employee

The Code of Federal Regulations states that an "employee employed in a bona fide administrative capacity" is any employee who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
> (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200.  The Code further explains that "[t]o qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers."  *Id.* § 541.201(a). What constitutes an employee's "primary duty" must be determined "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id.* § 541.700(a).  Factors that may be considered include "the relative importance of the exempt duties as compared to other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id.*

Additionally, to meet the primary duty requirement of an administrative employee, the "employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id.* § 541.201(a).  Some examples of administrative work include, but are not limited to "work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities."  *Id.* § 541.201(b).

Defendants urge that because Plaintiffs alleged that they performed "guerilla marketing tasks, such as attending events at nightclubs or handing out flyers at concerts," and moving furniture for Defendants, the administrative employee exception applies.  Doc. 43 at 8-9. Nonetheless, in their motion to dismiss, Defendants acknowledge that the Second Amended

Complaint alleges that Plaintiffs worked "in various capacities," and attempt to shift their heavy burden of proving the administrative employee exception because "Plaintiffs have not pled that they performed any other specific tasks or job duties." *Id.* Indeed, Defendants state that the administrative exception would apply based on an assumption that "other alleged job duties were not incidental to [their] primary roles of creative professionals . . . ." *Id.* at 9. Assumptions do not meet Defendants' burden.

The affirmative defense of the administrative employee exemption plainly has not been met based solely on the allegations of the Second Amended Complaint. Defendants have not established what Plaintiffs' primary duties were, the amount of time spent doing them, the amount of freedom given to Plaintiffs, or any other facts that demonstrate the administrative employee exemption applies. Thus, Defendants' motion to dismiss Counts I and II of the Second Amended Complaint on this basis is denied.

**B.     Fraudulent Federal Tax Return**

26 U.S.C. § 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." To prove a claim under this section, the plaintiff must establish: "(1) that the defendant issued information returns; (2) the information returns were fraudulent; and (3) defendant willfully issued the returns." *Dorseli v. Gonzalez*, No. 2:17-cv-37-FtM-99CM, 2017 WL 4286482, at *3 (M.D. Fla. Sept. 27, 2017) (citing *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297-98 (S.D. Fla. 2014)). This Court has stated that "[w]hether innocent or deliberate, the payor's filing of the wrong form establishes no liability under Section 7434 unless the form willfully misstates the payee's income." *Tran v. Tran*, 239 F. Supp. 3d 1296, 1298 (M.D. Fla. 2017).

The Second Amended Complaint alleges that "Defendants issued an informational return Form 1099 MISC directly to the IRS on behalf of Plaintiffs," and that "[t]he informational returns falsely misclassified Plaintiffs as independent contractors when in reality Plaintiffs were employees." Doc. 41 ¶¶ 70-71.  The purpose of this misclassification was "to reduce labor costs by avoiding the expenses of legally employing employees." *Id.* ¶ 36.  Additionally, the Second Amended Complaint alleges that Defendants' counsel created limited liability companies for Plaintiffs and other employees "for purposes of hiding the true employment relationship" and that the informational returns filed by Defendants used "the names of the limited liability companies Defendants required Plaintiffs to form to consummate their misclassification scheme." *Id.* ¶¶ 32, 72.  Under Count III of the Second Amended Complaint, Plaintiffs seek damages pursuant to section 7434 because Defendants' scheme involved filing false information returns that listed the limited liability corporations in lieu of Plaintiffs.

Defendants move to dismiss Count III because the Second Amended Complaint did not allege that Defendants willfully or fraudulently issued false information returns, or that they misreported the financial or economic information on the return. Doc. 43 at 10.  Plaintiffs respond that the Second Amended Complaint alleges that the purported payments on the returns filed by Defendants were inherently wrong because they named the limited liability companies, and not the individual employees who performed the work.  Doc. 46 at 6.  Thus, according to Plaintiffs, "Defendants over reported-income [sic] to the limited liability companies that never should have received payments in the first place." *Id.*

Some debate exists as to whether misclassification as an independent contractor is sufficient to state a claim under section 7434, or whether the actual amount reported must be misrepresented.  *Vera v. Challenger Air Corp.*, No. 16-cv-62354-GAYLES, 2017 WL 2591946,

- 15 -

at *2 (S.D. Fla. June 15, 2017) (recognizing that many courts have found allegations that a defendant willfully misrepresented the plaintiff's employment status to be sufficient, but following other cases that require a defendant to willfully file information returns that misrepresent the amount of payments made).  The United States District Court for the Eastern District of Virginia examined the statutory text of section 7434 in *Liverett v. Torres Advanced Enterprise Solutions LLC*, 192 F. Supp. 3d 648, 650-55 (E.D. Va. 2016).  There, the Court recognized that the statute is ambiguous as to what the phrase "with respect to" modified—the term "information return" or "fraudulent."  *Id.* at 650.  If "with respect to" modified the term "information return," then the statute created a broad cause of action for willfully filing "an information return that is false or misleading *in any respect* aimed at obtaining something of value . . . ."  *Id.*  On the other hand, if "with respect to" modified the term "fraudulent," then "the filing of an information return [would be] actionable only if the information return [wa]s false or misleading as to the amount of payments purportedly made."  *Id.*  The Court found the latter reading to be more consistent with congressional intent.  *Id.* at 653.

First, the Court placed weight on the definition of "information return" as "any statement of the amount of payments to another person required by" various delineated laws.  *Id.* at 652 (quoting 26 U.S.C. § 6724(d)(1)(A)).  Thus, by reading the statutory provisions together, section 7434 created a cause of action for the willful filing of "a fraudulent [statement of the amount of payments to another person] with respect to payments purported to be made to another person."  *Id.* at 652-53.  Under this reading, then the phrase "with respect to" would be redundant if it described "information return," which by definition already incorporated the amount of payments to a person.  *Id.* at 653.  In order for the phrase "with respect to" to be relevant, it would be required to modify the term "fraudulent."  *Id.*

Second, the Court found instructive that section 7434(e) provided that "[t]he decision of the court awarding damages in an action brought under subsection (a) shall include a finding of the correct amount which should have been reported in the information return." *Id.* The Court concluded that the "language demonstrate[d] that Congress contemplated that actionable fraudulent representations would relate to the amount paid to the aggrieved person." *Id.*

The Court additionally looked to the legislative history and purpose of section 7434. *Id.* Based on the House Report, the Court determined that the reason Congress enacted section 7434 "was that '[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers.' " *Id.* at 653-54 (quoting H.R. Rep. No. 104-506, at 35 (1996)). Specifically, a problem existed where individuals filed fraudulent information returns that reported large income to judges, law enforcement officials, and others in positions that may attract feelings of vengeance. *Id.* (citation omitted). Thus, the Court surmised that Congress designed section 7434 to afford a remedy to victims of the malicious reporting of false payments. *Id.* Additionally, the Court concluded that "[t]he fraudulent scheme [the] plaintiff allege[d] [in *Liverett*], by which [the] defendant [wa]s attempting to avoid the payment of employer taxes by misrepresenting employees as independent contractors, f[ell] beyond the scope of the policy problem that § 7434 was designed to address." *Id.*

In *Tran*, the Middle District of Florida followed this interpretation, although that case was not entirely analogous as it concerned a motion for default judgment. 239 F. Supp. 3d at 1297. Nonetheless, *Tran* is instructive. In following *Liverett*, the Court in *Tran* recognized that although several decisions held that section 7434 established liability for filing a Form 1099 instead of a Form W-2, even if the return accurately reported the money paid to the plaintiff, such cases

included little or no analysis of the statutory text. *Id.* Thus, the Court ruled that "an employer's filing of the wrong information-return form cannot establish liability under Section 7434 unless the form willfully misstates the amount of payment . . . ." *Id.* at 1298-99.

The Court will follow *Tran*. Although Plaintiffs argue that the amount of the payment listed in the information returns was incorrect because it named the wrong person, this argument is unavailing. There is no allegation that the statements of the amount of payments made were incorrect. Accordingly, the Court will dismiss Count III of the Second Amended Complaint without prejudice. Should Plaintiffs reasonably conclude that the amount of payments listed in the information returns was incorrect, they may file a Third Amended Complaint within 14 days of the date of this Order that addresses the deficiencies noted herein.

### C.    Georges' Alleged Unpaid Wages Under Florida Law

28 U.S.C. § 1331 grants federal courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This Court, thus, has jurisdiction where a case presents a federal question on the face of the plaintiff's well-pleaded complaint. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011). Additionally, where the Court has original jurisdiction over a civil action, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Here, federal subject matter jurisdiction exists based on Plaintiffs' claims under the FLSA, a federal statute. Doc. 41 ¶¶ 48-66. Defendants move to dismiss Count IV of the Second Amended Complaint for unpaid wages under Florida common law for lack of subject matter jurisdiction should Counts I, II, III, and V be dismissed. Doc. 43 at 11. Because Plaintiffs stated federal claims

- 18 -

under Counts I and II of the Second Amended Complaint, the Court will exercise its supplemental jurisdiction over Count IV pursuant to section 1367.  Accordingly, Defendants' motion to dismiss Count IV for lack of subject matter jurisdiction is denied.

### D.      Litigation Privilege

The litigation privilege "essentially provid[es] legal immunity for actions that occur in legal proceedings." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007).  Under Florida's litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Id.* (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)).  This is true regardless of "the nature of the judicial proceedings, whether based on common law, statutory authority, or otherwise." *Id.* at 384 (footnote omitted).  The Florida Supreme Court has explained that the litigation privilege exists to allow "for candid and unrestrained communications in th[e] proceedings, free of the threat of legal actions predicated on those communications . . . ." *Id.*

Relying on *Kentish v. Madahcom, Inc.*, 566 F. Supp. 2d 1343 (M.D. Fla. 2008), Defendants argue that the litigation privilege prevents Plaintiffs from pursuing Count V of the Second Amended Complaint for unlawful retaliation.  Doc. 43 at 12.  In *Kentish*, the plaintiff filed an FLSA action and, in response, the defendant filed a breach of contract counterclaim that sought to recover payments that the plaintiff charged to a commercial credit card.  *Id.* at 1344.  After the counterclaim was filed, the plaintiff sought leave of the Court to amend his complaint to include a claim for unlawful retaliation under the FLSA.  *Id.*  The Court determined that it was required to evaluate the breach of contract counterclaim in accordance with Florida law and, therefore, apply

the Florida litigation privilege. *Id.* at 1348. In light of the strength of Florida's litigation privilege, the Court concluded that "[a]llowing Plaintiff to maintain its retaliation claim would restrict Defendant's access to courts and its right to petition." *Id.* Thus, in the absence of an indication that Congress intended to override the state's litigation privilege, the Court ruled that "Florida's litigation privilege applie[d] to Defendant's Counterclaim," and denied the motion for leave to amend to add a claim for retaliation. *Id.* at 1349.

Other cases, however, have distinguished *Kentish*, or otherwise declined to follow the ruling. Within this district, in *Sederquist v. Industrial Engineering & Development, Inc.*, No. 8:11-cv-1084-T-26AEP, 2011 WL 3331307, at *2 (M.D. Fla. Aug. 3, 2011), the Court sidestepped the issue on a motion to dismiss because the plaintiff failed to include necessary allegations. In allowing the plaintiff to amend, the Court recognized the decision in *Kentish*, but also acknowledged that "[a]t least one other district court in the Southern District of Florida . . . continue[d] to hold that factual considerations [were] necessary to determine whether the filing of a counterclaim constitute[d] the necessary adverse action to support a retaliation claim." *Id.* (citing *Ramos v. Hoyle*, No. 08-21809-CIV, 2009 WL 2849093 (S.D. Fla. May 15, 2009)).

In *Ramos*, the Southern District did not address the litigation privilege. It did do so, however, in *Phillips v. Mitchell's Lawn Maintenance Corp.*, No. 13-20854-CIV-SIMONTON, 2015 WL 12533113 (S.D. Fla. Nov. 17, 2015). In that case, the plaintiffs were involved in litigation with the defendants, and the plaintiffs filed an FLSA action, arguing that defendants retaliated against them in various ways in underlying state law litigation, including by adding new claims. *Id.* at *1. The defendants moved to dismiss, arguing "that Florida's litigation privilege affords absolute immunity for all acts related to and occurring within judicial proceedings," relying on *Kentish*. *Id.* at *2. In evaluating the motion to dismiss, the Court recognized that in a prior

FLSA retaliation case between the parties, the defendants were granted summary judgment based on the Florida litigation privilege, and the order was affirmed in an unpublished Eleventh Circuit decision that did not discuss the merits of the case. *Id.* (citing *Phillips, et al. v. M.I. Quality Lawn Maintenance, et al.*, 537 F. App'x 908 (11th Cir. 2013)). Additionally, the Court acknowledged that it had previously dismissed with prejudice an FLSA retaliation claim against the defendants on the basis of the litigation privilege. *Id.* Nonetheless, the Court revisited its earlier decision after the plaintiffs re-filed the FLSA retaliation claim and alleged that the state law suit was a fabrication for which defendants had no proof. *Id.* at *3.

In re-evaluating its earlier decision, the Court reasoned that it had previously relied, in part, on *Kentish*, but that *Kentish* misread a decision of the Eleventh Circuit, *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274-5 (11th Cir. 2004). In *Jackson*, the Eleventh Circuit evaluated whether the litigation privilege applied to settlement discussions so as to bar state law claims for tortious interference and conspiracy to defraud. 372 F.3d at 1274-75. In doing so, it recognized that it was required to apply Florida law in evaluating the state law claims. *Id.* The Eleventh Circuit concluded that the litigation privilege did bar the state law claims "because the plaintiffs' complaint concern[ed] conduct that lay at the heart of the attempts to resolve the ongoing judicial proceedings . . . ." *Id.* at 1277. Subsequently, in *Phillips*, the Southern District concluded that "the Court in *Kentish* misapplied the holding in *Jackson* by focusing on whether Florida law and the Florida Litigation Privilege applied to the state based counterclaim brought by the Defendant, rather than examining whether the Florida Litigation Privilege applied to the Plaintiff's federal based retaliation claim, at all." 2015 WL 13533113, at *4. The Court evaluated other Southern District cases, as well as cases from other jurisdictions, and found that "the Florida

Litigation Privilege d[id] not apply to the Plaintiffs' retaliation causes of action predicated upon a federal statute." *Id.* at *5.

Although the Eleventh Circuit has not addressed whether a state litigation privilege may act as a bar to a federal retaliation claim, the issue was examined by the United States Court of Appeals for the Seventh Circuit in *Steffes v. Sepan Co.*, 144 F.3d 1070 (7th Cir. 1998). In *Steffes*, the plaintiff filed an action raising a count for discrimination on the basis of a disability in violation of the Americans with Disabilities Act ("ADA"), and a count for sex discrimination under Title VII. *Id.* at 1071. While the litigation was pending, the plaintiff obtained different employment, and the defendant called the new employer to verify the employment. *Id.* at 1073. During the call, the defendant informed the new employer of the plaintiff's disability, which caused the new employer to temporarily prohibit her from working. *Id.* at 1074. Because of this, the plaintiff filed a second action against defendant, which raised a claim for retaliation in violation of Title VII and the ADA. *Id.*

The defendant in *Steffes* moved to dismiss the action on, among other grounds, the basis of Illinois' litigation privilege. *Id.* Under the Illinois litigation privilege, anything said or written in the course of a legal proceeding is protected, as long as the communication pertains to the litigation. *Id.* The district court dismissed the retaliation claim because it found the telephone call to be a protected communication, although it did not specify that it relied on the Illinois litigation privilege. *Id.* at 1074-75. In reviewing the district court's ruling, the Seventh Circuit stated that "[a] state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action." *Id.* at 1074 (citing *Kines v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996); *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980); *Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994)). The Seventh Circuit additionally explained that "recognition of the litigation privilege . . . could

interfere with the policies underlying the anti-retaliation provisions of Title VII and the ADA" because "[r]etaliatory actions come in infinite variety, and even actions taken in the course of litigation could constitute retaliation in appropriate circumstances." *Id.* at 1075 (internal citation omitted). Because of this, the Court reasoned that "an absolute litigation privilege as defined in Illinois law would be too broad because it would insulate behavior that could otherwise be actionable under Title VII or the ADA." *Id.*

The Court finds persuasive the conclusions reached in *Phillips* and *Seffes* that a state litigation privilege cannot act as an absolute bar to a federal cause of action. Plaintiffs allege that the lawsuits against them in state court lack a reasonable basis in fact and contain false allegations, and that the lawsuits were intended to harass Plaintiffs, discourage them from filing this action, and were filed in retaliation for exercising federally protected rights. Doc. 41 ¶¶ 45-46. While the Court questions whether Defendants can defeat Plaintiffs' federal retaliation claim with the Florida litigation privilege, this issue is more appropriately addressed at the summary judgment stage of this litigation. Accordingly, Defendants' motion to dismiss Count V of the Second Amended Complaint on the basis of the Florida litigation privilege is denied, without prejudice.

### E. Beardsley

#### 1. Retaliation and Unpaid Wages

Beardsley moves to dismiss Counts IV and V, for unpaid wages and retaliation, respectively. Doc. 43 at 12, 14-15. With respect to unpaid wages, Beardsley argues that Georges does not allege that Beardsley was his employer under Florida common law, or that Beardsley was obligated to pay Georges' unpaid wages under Florida law. *Id.* at 14-15. Regarding the claim for retaliation, Beardsley argues that UNATION was the only party plaintiff to the state court actions. *Id.* at 12, 15. Plaintiffs agree to voluntarily dismiss Counts IV and V against Beardsley, without

prejudice.  Accordingly, Counts IV and V of the Second Amended Complaint are dismissed with respect to Beardsley.

### 2.  Liability As A Corporate Officer

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "[T]o be personally liable as an 'employer,' a corporate officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.' "  *Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x. 839, 845 (11th Cir. 2009) (quoting *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir.1986)).  "Whether an individual falls within this definition 'does not depend on technical or isolated factors bur rather on the circumstances of the whole activity.' "  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)).  In determining whether a corporate officer is an "employer," courts in this Circuit "inquire[ ] as to whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters in relation to an employee."  *Olivas*, 324 F. App'x at 845 (internal citations and quotations omitted).

Plaintiffs allege that Beardsley "is the Chief Strategy Officer of UNATION and at all relevant times exerted control over Defendant UNATION's employees, pay practices and policies."  Doc. 41 ¶ 2.  Plaintiffs further allege that Beardsley "supervised Plaintiffs and exerted control over their day to day activities."  *Id.* ¶ 24.  More specifically, Plaintiffs allege that "Defendants, including Defendant BEARDSLEY, required Plaintiffs to perform several different job functions . . . .  Defendant BEARDSLEY also required Plaintiffs to perform guerilla marketing tasks, such as attending events at nightclubs or handing out flyers at concerts."  *Id.* ¶ 25.  Plaintiffs largely combine their allegations regarding Beardsley with those of UNATION.  For example,

Plaintiffs allege that "Defendants required Plaintiffs to adhere to specific schedules and office hours." *Id.* ¶ 27.

Plaintiffs rely on *Melgar v. M.I. Quality Lawn Maintenance, Inc.*, No. 09-22243-CIV, 2011 WL 589994 (S.D. Fla. Feb. 10, 2011), to argue that dismissal is not warranted. However, *Melgar* was pending before the Southern District on a motion for summary judgment, not a motion to dismiss. *Id.* at *1. In connection with the motion, undisputed evidence was submitted showing that the corporate officer owned and was president of the defendant company, and did "everything that it [took] to basically run the company." *Id.* He ran the day-to-day operations through employees who he met with every day, had regular office hours, checked job sites, and solicited business. *Id.* He decided what work would be done, and how many people were necessary for jobs. *Id.* He had the power to hire and promote employees. *Id.* The decision, while helpful in demonstrating facts that render an individual liable as an employer, does not discuss the allegations that were contained in the complaint and, therefore, is not particularly instructive here.

However, a review of cases involving motions to dismiss on similar grounds as those here demonstrates that dismissal is not warranted. For example, the Court held that dismissal was warranted in *Ashby v. National Freight, Inc.*, No. 8:07-cv-898-T-30MSS, 2007 WL 3231803, at *1 (M.D. Fla. Oct. 30, 2007), in which the plaintiff referred to the individual defendant and the company collectively as defendants, but did not allege that the individual was a corporate officer, or that he held a supervisory or managerial position with the company. *Id.* The plaintiff also did "not allege what level of operational control or authority, if any, [the individual defendant] had over Plaintiff's compensation, schedule, or workload," and did not allege whether the individual defendant acted directly or indirectly in the interest of the company defendant with respect to the plaintiff's employment. *Id.* Because of these deficiencies, the Court determined that the plaintiff

had not alleged sufficient facts to impose liability on the individual defendant as an employer under the FLSA, and dismissed the count against him without prejudice.  *Id.*

On the other hand, in *Elwell v. Pierce N Tell, LLC*, No. 8:13-cv-2857-T-30TBM, 2014 WL 12617813, at *2 (M.D. Fla. Mar. 6, 2014), the Plaintiff alleged that the individual defendant owned the company defendant, was "a corporate officer who [was] involved in the day to day operations of [the corporate defendant] and had direct supervisory responsibility over [the plaintiff]."  Based on these allegations, the Court denied a motion to dismiss the FLSA claim against the individual defendant.  *Id.*  Similarly, in *Lourenco v. Eric Elkins Electric, Inc.*, No. 8:08-cv-1422-T-24 MAP, 2009 WL 10670579, at *2 (M.D. Fla. Sept. 16, 2009), the plaintiff alleged that the individual defendant "directed the terms and conditions of [his] employment," and the Court determined that "[s]uch alleged control indicate[d] some direct responsibility for the supervision of Plaintiff and involvement in the day-to-day operations of the company . . . ."  Accordingly, the defendant's motion to dismiss was denied.  *Id.*

The Second Amended Complaint here contains more factual allegations than were present in *Ashby*, and is more comparable to the cases of *Elwell* and *Lourenco*.  The Second Amended Complaint goes beyond merely stating that Beardsley was an employer, and Plaintiffs allege sufficient factual details to support their claims against Beardsley.  *Gregus v. Plan 4 College, Inc.*, No. 8:09-cv-01392-T-24-AEP, 2009 WL 3064664, at *1 (M.D. Fla. Sept. 18, 2009) (finding that because the complaint alleged facts that the defendants were either involved in the day-to-day operation or were directly responsible for the plaintiff's supervision, and considering the straightforward nature of an FLSA claim, the complaint provided fair notice to the defendants of the nature of the claim and the grounds on which it rested).  Therefore, Beardsley's motion to dismiss Counts I and II of the Second Amended Complaint is denied.

Accordingly, it is hereby **ORDERED:**

1.      Defendants' Motion to Dismiss Second Amended Complaint and Demand for Jury Trial, and Incorporated Memorandum of Law (Doc. 43) is **GRANTED in part and DENIED in part**.  Defendants' motion to dismiss Count III of the Second Amended Complaint is **GRANTED** without prejudice, and Beardsley's motion to dismiss counts IV and V against him is **GRANTED**.  Defendants' motion to dismiss Counts I and II is **DENIED** with respect to both UNATION and Beardsley, and is **DENIED** with respect to Counts IV and V against UNATION.

2.      Plaintiff is granted leave to file a third amended complaint within **FOURTEEN (14) DAYS** from the date of this Order, which corrects the deficiencies noted as to Count III.[3]  Failure to file a third amended complaint within the time permitted will result in dismissal of Count III with prejudice.

**DONE AND ORDERED** in Tampa, Florida on February 14, 2018.

Charlene Edwards Honeywell
United States District Judge


Copies:  All Parties of Record

---

[3] The Court notes that Plaintiffs have amended their complaint on two previous occasions. However, those amendments were made without the benefit of the Court's analysis and discussion of the relevant issues. It is for this reason that the Court is granting Plaintiffs one final opportunity to amend their complaint.